UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:  ANTARAMIAN PROPERTIES,
LLC and ANTARAMIAN FAMILY, LLC

_____

NBR SHOPPES, LLC, NAPLES BAY
FINANCIAL HOLDINGS, LLC, F. FRED
PEZESHKAN, RAYMOND SEHAYEK
and IRAJ ZAND,

      Appellants,

v.                                          Case No:   2:15-cv-289-FtM-38

SB CAPITAL GROUP, LLC and
GULFSHORE CAPITAL
PARTNERS, LLC,

      Appellees.
_____/

**ORDER**[1]

This matter comes before the Court on Appellants, NBR Shoppes, LLC, Naples Bay Financial Holdings, LLC. Fred Pezeshkan, Iraj Zand, and Raymind Sehayek's (collectively NBR) Appeal of the Bankruptcy Court's Order Awarding Breakup Fee to SB Capitol Group for Expenses Incurred as a Stalking Horse (Doc. #6) filed on June 16, 2015. The Appellees, SB Capitol Group, LLC and Gulf Shore Capitol Partners, LLC collectively (SB Capitol) filed their Response in Opposition (Doc. #9) on July 16, 2015.  NBR filed a

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Reply Brief (Doc. #10) on July 30, 2015.  The Appeal is fully briefed and ripe for the Court's review.

## BACKGROUND

SB Capitol initially agreed to purchase the property at issue from the Debtors for $22.5 million pursuant to Section 23 of the Bankruptcy Code 11 U.S.C. § 1123.  As part of the transaction SB Capitol proposed a breakup fee of $450,000 and an expense reimbursement of up to $150,000 if the Debtors sold the property to another party via an alternative transaction.

On February 17, 2015, the Debtors and SB Capitol presented that plan to the Bankruptcy Court.  However, two days later, the Debtors filed a motion to sell the assets and provide stalking horse protection to CPC Acquisitions, LLC (CPC).  While CPC offered the same purchase price as SB Capitol, CPC agreed to a much lower breakup fee of $225,000.  On February 20, 2015, SB Capitol informed the Bankruptcy Court that it would improve its initial proposal.  SB Capitol filed its improved Stalking Horse Motion with the Bankruptcy Court on February 24, 2015.

A hearing was conducted by the Bankruptcy Court on SB Capitol's improved stalking horse proposal.  On February 25, 2015, the Bankruptcy Court issued an Order approving SB Capitol's designation as the stalking horse bidder based upon SB Capitol's letter of intent dated February 23, 2015, and SB Capitol's proposed Investment Agreement. *In re Antaramian Properties*, 9:14-bk-10145 (Doc. #390).  In making its determination that SB Capitol should be the designated as the stalking horse bidder, the Bankruptcy Court found that SB Capitol's bid was the highest and best offer available.  *Id.*

The Bankruptcy Court continued that:

> Subject to the conditions set forth in the Amended Bid Procedures and in accordance with the Amended Bid Procedures, authorized to pay to SB Capital Group an expense reimbursement payment in the amount of up to $200,000 (the "**Expense Reimbursement**") if SB Capital Group does not withdraw its Stalking Horse Offer before the expiration of the Due Diligence Period and the Inspection Period in the event that the Closing does not occur due to either (1) the Final Sale Order not being entered by the Bankruptcy Court and any Alternative Transaction is consummated or (2) a breach or default by Seller under the Stalking Horse Purchase Agreement; provided, however, that if the Alternative Transaction is consummation of the Creditor Plan, SB Capital shall not be entitled to the Expense Reimbursement, unless the Creditor Plan Proponents amend the Creditor Plan to increase the economic value currently offered under the Creditor Plan to any claimant, class of claimants, or interest holders, in which event, and subject to the other conditions in the Amended Bid Procedures, SB Capital shall be entitled to the Expense Reimbursement.

*Id.* (emphasis in original).

The Bankruptcy Court specifically noted that the Stalking Horse Motion did not seek the approval of SB Capitol's Investment Agreement and the Bankruptcy Court made no determination in that regard. *Id.* at n.4. Instead, the Bankruptcy Court gave SB Capitol up to and including March 6, 2015, to submit a sales agreement.  That date was later enlarged up to and including March 9, 2016.  The Debtors elected not to enter into the transaction with SB Capitol and instead entered into an agreement with NBR. Based on the protections granted it in the Stalking Horse Protection Order, SB Capital filed its Motion for Payment of Expense Reimbursement, seeking expense reimbursement of expenses totaling $197,427.29. While the Debtors agreed that SB Capital Group was entitled to expense reimbursement, NBR, filed an objection to the SB Capitol's Reimbursement Motion

A hearing was held on the reimbursement issue on April 1, 2015.  The Bankruptcy Court announced its ruling on April 14, 2015.  In its ruling finding in favor of SB Capitol, the Bankruptcy Court found that that SB Capital Group was entitled to expense reimbursement, but not in the full amount requested. The Bankruptcy Court adjusted downwards the hourly fee rates requested by SB Capital Group's attorneys and capped expenses for meals.  On April 25, 2015, the Bankruptcy Court ordered the Plan Proponents of approved plan to pay SB Capitol, as the stalking horse bidder, a breakup fee of $175,476.45 for expenses in its failed purchase attempt.  NBR subsequently filed the instant appeal of the Bankruptcy Court's Order granting the breakup fee.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a). The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. In re Fish, 2013 WL 1104884, *2 (M.D. Fla. March 18, 2013) (citing In re Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th Cir.1994)). This Court reviews de novo the legal conclusions of the bankruptcy court. In re Fish, 2013 WL 1104884 at *2 (citing In re JLJ, Inc., 988 F.2d 1112, 1116 (11th Cir.1993)).

The standard of review employed by this Court in reviewing the bankruptcy court's findings of fact is the clearly erroneous standard of review described in Federal Rule of Bankruptcy Procedure 8013: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." In re Fish, 2013 WL 1104884 at *2 (citing In re Thomas, 883 F.2d 991, 994 (11th Cir.1989)). A finding of fact is clearly erroneous when, "although there is evidence to support it, the

reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." Crawford v. W. Elec. Co., Inc., 745 F.2d 1373, 1378 (11th Cir.1984) (citing United States v. United States Gypsum Co., 333 U.S. 364, 68 S. Ct. 525, 92 L. Ed. 746 (1948)).

## **DISCUSSION**

NBR appeals the decision of the Bankruptcy Court arguing: (1) the Bankruptcy Court erred in awarding SB Capitol a breakup fee where SB Capitol never submitted a definitive, written proposal to acquire Debtors' asset; (2) alternatively assuming that SB Capitol's letter of intent is deemed a definitive, written proposal, the Bankruptcy Court committed reversible error in awarding the breakup fee because SB Capitol's plan did not increase the economic value of the treatment of any creditor, class of creditor or equity security holders over the confirmed plan; and (3) if the Bankruptcy Court correctly awarded the breakup fee to SB Capitol, the breakup fee itself was unreasonable.

*(1) Whether the Bankruptcy Court Erred in Awarding SB Capitol a Breakup Fee*

NBR argues that it was error for the Bankruptcy Court to award a breakup fee to SB Capitol because SB Capitol never entered into a definitive purchase agreement. SB Capitol avers that a binding agreement is not necessary to award a breakup fee.

A breakup fee is a "fee paid by a seller to a prospective purchaser in the event that a contemplated transaction is not consummated." *In re Dorado Marine, Inc.*, 332 B.R. 637, 639 (Bankr. M.D. Fla. 2005) (quoting *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.),* 181 F.3d 527, 528 (3d Cir.1999)). The fee is intended to compensate the bidder for the time, effort, and risk of being the stalking horse, and to encourage the bidder to do the necessary due diligence with the assurance that its efforts

will be compensated if it is unsuccessful. *Id.* at 535. In a normal case, a debtor and a prospective bidder agree on certain bid procedures, including a breakup fee if the parties feel it is necessary, and present the court with a motion requesting approval of those procedures. *In re Dorado Marine, Inc.*, 332 B.R. at 639. If the court approves the fee, then if the conditions precedent are met, and the bidder is unsuccessful, the fee is paid. *Id.*

While NBR avers that a breakup fee cannot be paid to SB Capitol because there was no binding purchase agreement, the terms and conditions of the Bankruptcy Court's Stalking Horse Protections Order did not require a binding purchase agreement for the breakup fee to be paid. The Bankruptcy Court directed the Parties as follows:

> The Stalking Horse Offer shall be further memorialized by a more definitive purchase and sale agreement among the Debtors and the Stalking Horse Bidder similar to that appended to the Letter of Intent (the "Stalking Horse Purchase Agreement"), which the Debtors shall file with the Bankruptcy Court promptly upon its execution (to occur on or before March 6, 2015).

*In re Antaramian Properties*, 9:14-bk-10145 (Doc. #390, p.6). The Bankruptcy Court specifically noted that the Stalking Horse Motion did not seek the approval of SB Capitol's Investment Agreement and the Bankruptcy Court made no determination in that regard. *Id.* at p.3, n.4. The Bankruptcy Court found SB Capitol's Letter of Intent and Investment Agreement were sufficient to invoke stalking horse protections for SB Capitol.

NBR argues that while the Bankruptcy Court did not consider that a final agreement was not in place when it granted stalking horse protections to SB Capitol, the Court did set a deadline for such an agreement to be in place. The Bankruptcy Court did indeed direct SB Capitol to file a purchase and sales agreement by March 6, 2015. SB Capitol moved the Court for an extension of time to file the sales agreement, which the

Court granted giving SB Capitol up to March 9, 2015, to file. However, on March 9, 2015, NBR and the other plan proponents filed their Joint Plan of Reorganization (Joint Plan) for the properties. The Joint Plan rejected SB Capitol's offer and accepted the alternative transaction proposed by NBR. *Id.* (Doc. #413). The Debtors terminated negotiations with SB Capitol in favor of an alternative bidder on the day SB Capitol's sales agreement was due. As such, a binding purchase agreement could not be finalized on March 9, 2015, because the deal with SB Capitol was cancelled by NBR and the Joint Plan proponents.

Furthermore, NBR recognized in the March 9, 2015 Joint Plan that SB Capitol would be entitled to breakup fees due to the fact that an alternative transaction was accepted as part of the new Joint Plan. The Joint Plan states in pertinent part: "The Plan Proponents estimate that the Plan Cash and Cash on Hand shall be sufficient to pay the following . . . Any Break Up Expenses to SB Capitol to the extent Allowed by the Bankruptcy Court." Id. at p.2.

Since a final purchase agreement was not a condition precedent in the Bankruptcy Court's Stalking Horse Protection Order, and the Debtors rejected the Stalking Horse bid submitted by SB Capitol by accepting the Joint Plan's alternative transaction, the Bankruptcy Court did not commit an error by awarding SB Capitol a breakup fee.

### (2) *Whether SB Capitol's Plan Increased the Economic Value*

NBR argues that the Joint Plan did not increase the economic value to any creditor, class of creditors or equity security holders. NBR avers that SB Capitol cannot receive a breakup or expense fee because the Joint Plan did not improve the economic value for the Plan Proponents and creditors over the economic value of the initial plan offered by SB Capitol. SB Capitol argues that NBR's argument is precluded by *res judicata* because

during the confirmation of the Joint Disclosure Statement for the Joint Plan NBR argued in favor of the economic benefits of the Joint Plan over the initial plan sponsored by SB Capitol.

NBR's argument that the Joint Plan's economic value is actually less than the SB Capitol's plan is without merit.  The affidavit of Robert Frazitta, Vice President for the Naples Bay Property and Trustee of the (Antatamian) Family Trust listed reasons to the Bankruptcy Court why the Joint Plan was of benefit. ([Doc. #3-38](Doc. #3-38)).  Frazitta stated that the Joint Plan would minimize administrative costs by avoiding protracted litigation.  Frazitta continued that the Joint Plan would close the Chapter 11 proceedings as expeditiously as possible, and create a unified ownership that would enhance the distribution of funds to the creditors.  Significant reduction in litigation costs and an enhanced distribution of funds to creditors would improve the economic value of the Joint Plan by reducing costs and fees and by getting funds to creditors quicker than the SB Capitol plan.

Furthermore, NBR noted in the Disclosure Statement filed with the Bankruptcy Court that the Joint Plan would be in the best interest of the creditors.  The Disclosure Statement reads in pertinent part:

> The Plan Proponents believe the Plan is in the best interest of creditors and stakeholders and maximizes distributions to creditors that would otherwise be consumed by costly litigation and result in the accrual of additional administrative expense. To understand the nature of the disputes that existed among the Plan Proponents, the Plan Proponents urge parties-in-interest to consult and compare the disclosure statement filed by the Creditor Plan Proponents with the disclosure statement filed by the Debtors on March 2, 2015. The disclosure statements describe the complex nature of many of the claims resolved by the Plan and outlines the various positions of the parties with respect to various Litigation Claims, Causes of Action, and Avoidance Actions. Given the diametrically opposed positions of the parties, it is

> difficult, if not impossible to determine the probability of success. The only certainty is that if the disputes were litigated, all of the Plan Proponents would incur significant attorney's fees, reducing the assets that could be contributed to fund a plan of reorganization.

(Doc. #3-28, p. 21).

It is somewhat disingenuous for NBR to argue to the Bankruptcy Court the benefits to the creditors of the Joint Plan over SB Capitol's plan, and then argue the opposite to this Court.  Based upon NBR's own statements and that of the Joint Plan's proponents supporting the economic value of the Joint Plan over SB Capitol's plan, the Court finds the Joint Plan increased the economic value to creditors, any class of creditors or equity security holders.  Since the Joint Plan increased the economic value to the creditors the Bankruptcy Court did not commit reversible error in awarding the breakup fee to SB Capitol.

### (3) *Whether the Breakup Fee Itself was Unreasonable*

NBR argues that the amount of the breakup fee awarded to SB Capitol was unreasonable under the circumstances.  SB Capitol responds that breakup fees that range from 1% to 4% of the purchase price of the property at issue are considered reasonable by most courts.

The Bankruptcy Court approved a breakup fee award of up to $200,000.00 in its original Order approving SB Capitol as the stalking horse. (Doc. #390).  NBR did not object to the $200,000.00 expense cap at that time. SB Capitol submitted its Motion for Payment of Expense Reimbursement, seeking expense reimbursement of expenses totaling $197,427.29.  After reviewing SB Capitol's request, the Bankruptcy Court reduced the reimbursement to $175,476.45.  To arrive at the reduced reimbursement fee, the

Bankruptcy Court capped the attorney's hourly rate and limited the out of town meal expenses to $85.00 per day.

The Bankruptcy Court's reimbursement award was within the limits set forth in the Stalking Horse Order and was less than 1% of the total purchase price. *See In Re Sea Island Company*, 2010 WL 4393269 * 3 (Bankr S.D. Ga. September 15, 2010) (holding that a breakup fee of 3% constituted a fair and reasonable percentage of the proposed purchase price). The rates of the attorneys from New York and Chicago were reduced to better reflect the local rates for the same work and the daily meal per diem was reduced to offset what the Bankruptcy Court determined to be overly expensive meals. As such, the Court finds that the Bankruptcy Court's reimbursement determination of $175,476.45 was reasonable.

### (4) Whether the Case should be Remanded to the Bankruptcy Court for Attorney's Fees

SB Capitol moves the Court to remand the case back to the Bankruptcy Court for a determination on attorney's fees for having to defend this appeal. The Appellee presented no case law or rule that would support its position. In fact, neither the Bankruptcy Code nor the Rules of Bankruptcy Procedure contain provisions expressly providing for an award of attorney's fees on appeal to a prevailing party, whether debtor or creditor. *In Re Anthony L. Tartaglia*, 2:07-cv-100-FtM-29. the Court notes that 11 U.S.C. § 523(d), does allow a debtor reasonable attorney's fees in a determination of dischargeablity where a discharge is obtained and the creditor's position was not substantially justified. However, the facts of this case do not fall under § 523(d).

Fed. R. Bankr. P. 8020 allows the Court to impose costs including attorney's fees associated with an appeal that is determined by the Court or the Bankruptcy Appeals Panel (BAP) to be frivolous. *In re Porto*, 645 F.3d 1294, 1306–07 (11th Cir. 2011). The Advisory Committee Note to Rule 8020 references Federal Rule of Appellate Procedure 38 and states that the authority to impose sanctions is the same for district courts sitting as appellate courts, bankruptcy appellate panels, and courts of appeals. Fed. R. Bankr. P. 8020 advisory committee's note. The Supreme Court has stated that "Rules 11 and 38 are better read together as allowing expenses incurred on appeal to be shifted onto appellants only when those expenses are caused by a frivolous appeal, and not merely because a Rule 11 sanction upheld on appeal can ultimately be traced to a baseless filing in district court." *In re Porto*, 645 F.3d at 1306, 07 (citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 407, 110 S. Ct. 2447, 2462, 110 L. Ed.2d 359 (1990)).

The Bankruptcy Court disagreed with NBR's position and awarded SB Capitol its expenses incurred in performing its due diligence as the stalking horse.  This Court agreed with the Bankruptcy Court's determination as described above which resulted in NBR losing its appeal.  However, simply because NBR lost on appeal does not make the appeal frivolous. *Cordoba v. Dillard's, Inc.,* 419 F.3d 1169, 1181–82 (11th Cir.2005) (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421–22, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) (holding that "[I]t is important that courts not engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.").

NBR's appeal referenced case law and made cogent arguments that supported its premise. Therefore, the Court does not find good cause to remand the case to the Bankruptcy Court for attorney's fees on appeal.

## **CONCLUSION**

Based upon the Court's review of the Parties memoranda of law and the bankruptcy record, the Bankruptcy Court did not err in awarding SB Capitol a breakup fee. Further, the Bankruptcy Court did not committed reversible error in awarding the breakup fee because SB Capitol did not submit a signed sales agreement with its stalking horse proposal. Finally, the amount of expenses awarded to SB Capitol was reasonable.

Accordingly, it is now

**ORDERED:**

(1) The Decision of the Bankruptcy Court awarding a breakup fee in the amount of $175,476.45 to SB Capitol is **AFFIRMED**.

(2) SB Captiol's request for an award of attorney's fees for defending this appeal is **DENIED**.

(3) The Clerk of the Court is directed to enter judgment accordingly, transmit a copy of this Order and Judgment to the Clerk of the Bankruptcy Court, terminate the appeal and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 31st day of August, 2016.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record